UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

N⁰ 04 Civ. 2236 (RJS)
_____

HARVEY LAPIN,

Plaintiff,

VERSUS

GOLDMAN SACHS & CO., AND GOLDMAN SACHS GROUP, INC.,

Defendants.

_____

MEMORANDUM AND ORDER
September 15, 2008

RICHARD J. SULLIVAN, District Judge:

Plaintiff Harvey Lapin brings this securities class action against defendants Goldman Sachs & Co., and Goldman Sachs Group, Inc. (collectively "GS") pursuant to § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. Specifically, Plaintiff alleges that GS defrauded class members by making materially false misstatements and omissions in public statements relating to improper conflicts of interest that existed between GS's research and investment banking departments. (*See* Second Am. Compl. ("SAC") ¶¶ 2-3.) Plaintiff brings this action on behalf of public investors who purchased the common stock of Goldman Sachs Group, Inc., during the period from July 1, 1999 through May 7, 2002 (the "Class Period"). (*See* SAC ¶ 1.)

Before the Court is Plaintiff's motion to certify the class pursuant to Rule 23 of the Federal Rules of Civil Procedure. GS opposes the certification motion on three

grounds. First, GS argues that the adequacy element is not satisfied because Plaintiff is not an appropriate class representative. (*See* GS Opp'n at 26-30.) Second, GS contends that Rule 23(b) is not satisfied because individual issues of knowledge of the alleged fraud will predominate over common issues. (*See id.* at 8-16.) Finally, GS asserts that Rule 23(b) is likewise not satisfied because Plaintiff has failed to prove loss causation at this stage. (*See id.* at 16-26.)

For the reasons that follow, Plaintiff's motion to certify the class is granted.

I. BACKGROUND

This action arises out of Plaintiff's claim that GS "misrepresent[ed] its business practices and [made] misleading statements in the course of its business, which artificially inflated the price of Goldman's stock during the Class Period." (Pl.'s Mem. at 2.) Specifically, Plaintiff contends that, while GS represented to the public that GS's research department produced objective research that was "unbiased" and "independent" of the investment banking department, GS's own internal documents indicate that this was not the case, that the research and investment banking departments actually were in "frequent and direct" conflict, and that the research produced was tainted because of this conflict. (*Id.*) General familiarity with the specific facts of this case, as set forth in *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006), is presumed.

This case was transferred into this District from the District of Nevada on March 19, 2004. On February 23, 2004, prior to the transfer, Plaintiff was appointed Lead Plaintiff, and the law firms of Kirby, McInerney & Squire, LLP and Glancy Binkow & Goldberg LLP were appointed as co-lead counsel.

Plaintiff filed the First Amended Complaint ("FAC") on June 30, 2004. On February 23, 2005, the Honorable Kenneth M. Karas, District Judge, to whom this case was previously assigned, granted the defendants' motion to dismiss the FAC without prejudice to the filing of a second amended complaint. The SAC was filed on February 25, 2005, and again GS moved to dismiss. On September 29, 2006, Judge Karas denied Defendants' motion to dismiss the SAC, except that the motion to dismiss original defendant Henry M. Paulson was granted. *See Lapin*, 506 F. Supp. 2d at 249. GS answered the complaint on November 14, 2006.

The motion for class certification was fully submitted as of August 22, 2007. On September 4, 2007, this case was reassigned to the undersigned. The Court held oral argument on the motion on April 16, 2008.

II. DISCUSSION

Courts in this district had previously held that, in reviewing a motion for class certification, "the district court must accept all of the allegations in the pleadings as true . . . and avoid conducting a preliminary inquiry into the merits." *Dunnigan v. Met. Life Ins. Co.*, 214 F.R.D. 125, 133 (S.D.N.Y. 2003) (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 477 n.5 (S.D.N.Y. 2002)). Accordingly, under the old standard, a proposed lead plaintiff needed only to make "some showing" that the Rule 23 requirements were met. *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999). However, in the recent case of *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 41 (2d Cir. 2006) (hereinafter

2

"*In re IPO*"), the Second Circuit held that "a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met" and that "such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established . . . ." Thus, while Plaintiff bears the burden of establishing that the requirements of Rule 23 have been met based on the facts contained in the SAC, under *In re IPO*, the Court should not accept those facts as true *if* they are contested. *See id.* at 41-42. Rather, the Court must resolve disputed issues of fact that go to the merits of the claim to the extent they are relevant to the Rule 23 determination. *See id.*

### A. Plaintiff Has Met the Requirements of Rule 23(a)

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. *See In re IPO*, 471 F.3d at 27 ("[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met . . . ."). Rule 23(a) provides that a class may be certified only if

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23; *see also Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

### 1. Numerosity

"The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Central States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC* (hereinafter "*Central States*"), 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is generally presumed when the proposed class would have at least 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg On Class Actions 2d*, § 3.05 (1985 ed.)); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi*, 242 F.R.D. at 84 (quoting *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004)); *see also In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 280-81 (S.D.N.Y. 2002) ("Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market.") (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 123 (S.D.N.Y. 1997)); *Wagner v. Barrick Gold Corp.*, Nos. 03 Civ. 4302 *et al.*

(RMB), 2008 WL 465115, at *2 (S.D.N.Y. Feb. 15, 2008).

The Court finds that Plaintiff has satisfied the numerosity requirement. Plaintiff has alleged, and GS does not contest, that at the time of the alleged fraud, GS had approximately 440 million shares of common stock outstanding, which traded on the New York Stock Exchange at an average daily trading volume of 1.2 million to 2.9 million shares. (*See* Hakala Decl. ¶¶ 7-8 & Ex. C.) These facts demonstrate that the proposed class is sufficiently large so as to satisfy the numerosity requirement. *See In re Deutsche Telekom*, 229 F. Supp. 2d at 281 (finding numerosity element satisfied where 200 million shares issued pursuant to defendant's prospectus); *Wagner*, 2008 WL 465115, at *2 (finding class sufficiently numerous where defendant had 543 million outstanding shares with an average daily trading volume of 3.9 million shares). In addition, Plaintiff has shown that there were hundreds and even thousands of record holders of GS stock in or around 2000 through 2002, clearly surpassing the 40 possible plaintiffs necessary for the presumption. (*See* Press Decl. Ex. A.) Accordingly, the Court finds that Plaintiff has satisfied the numerosity requirement.

2. Commonality and Typicality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Central States*, 504 F.3d at 245 (quoting *Marisol*). This requirement is generally applied "'permissively'" in securities fraud litigation. *See In re Vivendi*, 242 F.R.D. at 84 (quoting *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 WL 22077464, at *3 (S.D.N.Y. Sept. 8, 2003)). Plaintiff need not show that all arguments are identical, "'only that common issues of fact or law affect all class members.'" *In re Deutsche Telekom*, 229 F. Supp. 2d at 281 (quoting *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)).

"Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Central States*, 504 F.3d at 245 (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). "Typicality does not require that the situations of the named representatives and the class members be identical." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citing *Trief*, 144 F.R.D. at 200). However, "'plaintiff's claim and the class claims [must be] so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol*, 126 F.3d at 376 (quoting *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Courts have recognized that the commonality and typicality requirements of Rule 23 "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol*, 126 F.3d at 376 (citations omitted); *see also Gen. Tel. Co. of the Sw.*, 457 U.S. at 157 n.13. The commonality and typicality requirements do not mandate that the claims of the lead

plaintiff be identical to those of all other plaintiffs; rather, the proposed lead plaintiff must simply demonstrate that the claims of all proposed plaintiffs are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence," and that the claims of the potential class members "share a common question of law or of fact." *Marisol*, 126 F.3d at 376.

Other than asserting that Plaintiff is subject to a unique defense (discussed *infra* at Section III.A.4), GS does not otherwise contest Plaintiff's assertions that the commonality and typicality requirements of Rule 23(a) are met. (*See* GS Opp'n at 26-28.) In light of this, and after considering the facts before the Court, the Court finds that, apart from considerations of unique defenses, Plaintiff has otherwise satisfied these requirements. Plaintiff has demonstrated that the claims of the potential class members, including his own, share common issues of law and fact sufficient to satisfy the commonality and typicality requirements. Plaintiff has set forth several issues of fact or law that will be common to the class, including, *inter alia*, whether GS misrepresented or omitted material facts concerning the alleged conflict, whether those omissions or misrepresentations were false or misleading, and whether the price of GS stock was artificially inflated as a result of the omissions or misrepresentations. (*See* Pl.'s Mem. at 8-11.) The Court finds that the claims of the proposed plaintiff class arise out of the same alleged facts and are based on common legal theories. Accordingly, the commonality and typicality requirements are met.

3. Adequacy

Finally, under Rule 23(a)(4), Plaintiff must demonstrate that he is an adequate lead plaintiff. For the reasons that follow, the Court finds that Plaintiff meets the adequacy requirement.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." A "[d]etermination of adequacy typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs.*, 502 F.3d at 99 (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). The inquiry is designed "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In addition, "[c]ourts also consider 'whether a putative representative is familiar with the action, whether he has abdicated control of the litigation to class counsel, and whether he is of sufficient moral character to represent a class.'" *Niemiec v. Ann Bendick Realty*, No. 04 Civ. 897 (ENV), 2007 WL 5157027, at *12 (E.D.N.Y. Apr. 23, 2007) (quoting *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004)); *see also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff."); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) ("The Second Circuit has allowed for the consideration of characteristics such as

5

honesty, trustworthiness, and credibility in judging the adequacy of a class representative pursuant to Rule 23(a).") (collecting cases). A lead plaintiff must also possess "a minimum threshold of knowledge about the case which, considering the nature of the claim, is sufficient to make reasonable decisions at critical stages of the litigation." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1998 WL 50211, at *11 (S.D.N.Y. Feb. 6, 1998). Thus, "class certification may properly be denied 'where the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987)). Finally, a proposed class representative may not satisfy the adequacy prong if his or her case involves problems that "could become the focus of cross-examination and unique defenses at trial, to the detriment of the class." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 144.

GS first contends that Plaintiff is an inadequate lead plaintiff because "he has no understanding of his obligations as class representative, is not in the habit of supervising his counsel, and has never participated in any decisions related to the litigation." (GS Opp'n at 28-29 (citing record).) GS also contends that Plaintiff's provision of incorrect testimony renders him an inadequate lead plaintiff. (GS Opp'n at 29-30.) The Court rejects GS's arguments. Plaintiff has demonstrated that he is familiar with the facts and legal theories underlying the case, is in regular contact with his lawyers, has met with them, has reviewed the complaint and other case documents, and understands that he is responsible for making decisions that impact the class and representing the class's best interests. (*See* Revised Wheeler Decl. ¶ 4 at Ex. "Lapin Tr." ("Lapin Dep. Tr.") at 12-13, 55-56, 59-62, 64-65.)

Given this showing, the Court concludes that Plaintiff is an adequate class representative who will fairly represent the interests of the class. GS's assertions — namely that Plaintiff has "ceded" control of his case over to his attorneys and "did not even remember filing a class action lawsuit" in another unrelated case (*see* GS Opp'n at 29) — do not show that Plaintiff is "unable or unwilling to protect the interests of the class." *In re Vivendi*, 242 F.R.D. at 88 (quoting *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003)). Plaintiff's knowledge or recollection of a litigation wholly unrelated to this case is, standing alone, insufficient to render him an inadequate plaintiff in the litigation before *this* Court. Moreover, "'in complex securities litigation, named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel.'" *In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1280640, at *6 (S.D.N.Y. Apr. 30, 2007) (quoting *Baffa*, 222 F.3d at 61; *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005) ("[A] great deal of reliance upon the expertise of counsel is to be expected.").

GS also argues that Plaintiff's provision of incorrect testimony renders him an inadequate lead plaintiff. (*See* GS Opp'n at

29-30.) Specifically, GS asserts that Plaintiff's statement that he "bought 75 shares of Goldman Sachs stock" in his certification (*see* Wheeler Decl. Ex. A ¶ 4) was incorrect, as Plaintiff conceded at his deposition that his "financial advisor" made the decision to purchase the stock (*see* Lapin Dep. Tr. at 29, 51-52).

There is some authority for the proposition that inaccurate testimony that "subjects [the proposed lead plaintiff's] credibility to serious question" is grounds for denial of a class certification motion. *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983); *see also Savino*, 164 F.3d at 87 ("To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff.") (citing *Kline*, 702 F.2d at 402-03); *Attenborough v. Constr. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100-01 (S.D.N.Y. 2006). However, as one district court in this Circuit has put it, "[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *In re Colonial P'ship Litig.*, No. H-90-829 (JAC), 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993).

Here, the minor discrepancy (if it can even be called that) between Plaintiff's original statement that he purchased GS stock and his later statement that his investment advisor actually purchased the stock on Plaintiff's behalf for the account of a profit-sharing plan for employees of Plaintiff's dental practice, does not impugn Plaintiff's credibility in any meaningful way. The discrepancy is simply not so material that it renders Plaintiff inadequate to represent the proposed class, nor does it jeopardize the interests of the class in any way. Indeed, other courts in this Circuit have found that similar inconsistencies do not foreclose a finding of adequacy. *See Hua Mui v. Union of Needletrades, Indus. and Textile Employees, AFL-CIO*, No. 97 Civ. 7270 (HB), 1999 WL 4918, at *4 (S.D.N.Y. Jan. 5, 1999) (finding that, despite "general" credibility problems, plaintiff was an adequate lead plaintiff where the credibility issues "[did] not specifically relate to . . . the duty of fair representation central to this lawsuit"); *Cruden v. Bank of New York*, Nos. 85 Civ. 4170 *et al.* (JFK), 1988 WL 9514, at *5 (S.D.N.Y. Feb. 1, 1988) ("[T]he inconsistencies in plaintiffs' deposition testimonies put forth by defendants are not significant enough so as to indicate that plaintiffs' interests are antagonistic to those of the class or that plaintiffs will not vigorously and adequately represent the class. Indeed, courts have held that inconsistencies in deposition testimonies are generally insufficient to disqualify plaintiffs from representing the class."); *Kronfeld v. Trans World Airlines, Inc.*, 104 F.R.D. 50, 52 (S.D.N.Y. 1984) (holding that minor discrepancies between deposition testimony and other documents, while they "may properly be inquired into upon a trial to show the claimed inconsistencies . . . hardly serve to disqualify plaintiff as a class representative. They are not of such a nature as to unduly burden the class by diverting attention from the substance of the basic claim advanced on behalf of the class . . . ."); *In re Priceline.com Inc.*, 236 F.R.D. 89, 97 (D. Conn. 2006) (holding that discrepancies in plaintiff's testimony did not demonstrate a lack of credibility or raise an issue that "would

7

jeopardize the absent class members' claims should defendants raise this issue at trial"). Likewise, courts that have found a plaintiff to be an inadequate lead plaintiff due to credibility issues have done so where the issues were much more substantial. *See Savino*, 164 F.3d at 87 (upholding a determination of inadequacy based on the finding that the plaintiff's "differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial"), *Kaplan v. Pomerantz*, 132 F.R.D. 504, 509-10 (N.D. Ill. Oct. 12, 1990) (granting motion to decertify class where lead plaintiff gave false testimony in a "deliberate attempt to conceal information" and where lead counsel was complicit in the false testimony), *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 256-57 (S.D.N.Y. 1985) (finding plaintiff failed to satisfy the adequacy requirement where he changed his testimony multiple times and "repeatedly stated that his memory regarding the complaint and his dealings in [defendant's] stock [were] poor"), *Cohen v. Laiti*, 98 F.R.D. 581, 582-83 (S.D.N.Y. 1983) (finding plaintiff to be an inadequate lead plaintiff where there were multiple contradictions between plaintiff's testimony and the allegations in the complaint).

Accordingly, the Court finds that Plaintiff has satisfied the adequacy prong of Rule 23(a).

### 4. Plaintiff is not Subject to any Unique Defenses that Preclude Certification under Rule 23(a)

In addition to the objections discussed above, GS also contends that Plaintiff's motion for class certification must fail because Plaintiff is subject to a unique defense — lack of standing — in that he delegated "substantial investment authority" to an investment advisor, thereby negating his standing to sue under Section 10(b). (*See* GS Opp'n at 27.) In support, GS cites several cases for the proposition that a plaintiff must "have some level of involvement in [an] investment decision to invoke the protection of Section 10(b), as that provision seeks to shield investors from fraudulent information in the course of securities investment decisions." (GS Opp'n at 27.) GS also asserts that Plaintiff conceded that he delegated complete decision-making authority to his investment advisor, and that his advisor had "complete discretion" to trade on behalf of Plaintiff and was not required to seek Plaintiff's approval before executing trades. (GS Opp'n at 27.) Plaintiff responds that the unique defense raised by GS is not meritorious and, in any event, does not preclude certification. For the reasons that follow, the Court finds that GS has not shown that Plaintiff is subject to a potentially meritorious unique defense that prevents Plaintiff from satisfying the typicality, commonality, or adequacy requirements of Rule 23(a).

As a preliminary matter, the Court notes that where a defendant raises the issue of a unique defense as an argument against certification under Rule 23(a), courts routinely consider that argument under the typicality, commonality, and/or the adequacy prongs of Rule 23(a). *See, e.g.*, *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of

its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 163 n.18 (S.D.N.Y. 2007) (noting that defendants' "unique defense" arguments "are relevant to both Rule 23's typicality and adequacy of representation requirements" and applying principles relevant to both); *Rocco v. Nam Tai Elec., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("Just as [the proposed lead plaintiff] is subject to unique defenses questioning his typicality, this Court also finds him prone to the following unique defenses that jeopardize his adequacy."); *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 n.8 (S.D.N.Y. 2000) ("Inasmuch as the 'commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis' of both, the court considers case law discussing the issue of unique defenses in terms of both Rules 23(a)(2) and (a)(3).") (quoting *Marisol*, 126 F.3d at 376). Accordingly, the Court will address GS's unique defense argument under all three prongs of Rule 23(a).

"'While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" *Baffa*, 222 F.3d at 59-60 (quoting *Gary Plastic Packaging*, 903 F.2d at 180). "The defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to 'devote considerable time to rebut the unique defense.'" *Hallet v. Li & Fung, Ltd.*, No. 95 Civ. 8917 (JSM), 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997) (quoting *Landy v. Price Waterhouse*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989)). "However, the court should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate." *Hallet*, 1997 WL 621111, at *3 (citing *In re September 4, 2008 Ins. Group Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997)). Additionally, "[t]he rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit;' in fact, 'a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him [or her] that would not impact other class members.'" *In re Frontier*, 172 F.R.D. at 41 (quoting *Langner v. Brown*, No. 95 Civ. 1981 (LBS), 1996 WL 709757, at *3 (S.D.N.Y. Dec. 10, 1996)); *see also Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *3 (S.D.N.Y. Mar. 6, 2008) ("The typicality requirement can be satisfied even where a putative class representative is subject to unique defenses."); *Trief*, 144 F.R.D. at 200-01 ("[I]t is beyond reasonable dispute that a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members.") (citing *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1213-14 (S.D.N.Y. 1992) and *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 469-70 (S.D.N.Y. 1968)).

First, the Court finds that GS has not shown that Plaintiff is subject to a potentially meritorious unique defense that preclude certification under Rule 23(a). None of the

cases cited by GS involved a situation in which the court declined to certify a class because of the presence of a unique defense. Indeed, the cases cited by GS support the proposition that, at least at the motion to dismiss or summary judgment stage, *some* involvement by a plaintiff in the investment decision may render plaintiff a "purchaser" for purposes of a Section 10(b) action. *See Seippel v. Sidley, Austin, Brown & Wood, LLP*, 399 F. Supp. 2d 283, 296-97 (S.D.N.Y. 2005) (declining to dismiss the complaint on standing grounds, finding, *inter alia*, that on the complaint, plaintiff's "participation and consent was required for major financial decisions affecting the couple, such as the sale of [her husband's] stock"); *In re Adelphia Commc'ns Corp. Sec. and Derivatives Litig.*, 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005) (dismissing complaint where plaintiffs "did not participate in any sort of investment decision" and "made no election whether or not to receive [stock] . . . nor had any choice as to how much [stock] to receive in the dividend"); *see also Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc.*, 800 F.2d 177, 181 (7th Cir. 1986) (affirming grant of summary judgment in favor of defendants where plaintiff "transferred to [the investment advisor] *full* discretion to develop and implement a prudent portfolio strategy," "was not required to approve each transaction," and did not participate in decisions to purchase or sell a security); *Medline Indus., Inc. Employee Profit Sharing and Ret. Trust v. Blunt, Ellis & Loewi, Inc.*, No. 89 Civ. 4851 (JBZ), 1993 WL 13436, at *2 (N.D. Ill. 1993) (denying motion for summary judgment on standing grounds where genuine issue of fact existed as to whether plaintiff qualified as a purchaser "given conflicting deposition testimonies regarding [plaintiff's] role in the decision to invest [the stock]"). Given the applicable law, and the fact that Plaintiff has pointed to his testimony that he participated to a degree in the decisions of his investment manager to buy and sell stock, the Court cannot, at this point, find that the unique defense is "meritorious." *Hallet*, 1997 WL 621111, at *3.

Second, even if GS *had* shown the presence of a meritorious unique defense as to Plaintiff, the Court finds that the litigation of this potential defense will not "threaten to become the focus of the litigation," *Baffa*, 222 F.3d at 59-60, because it does not go to the heart of Plaintiff's case and will not require considerable time and effort to rebut. *In re Ashanti Goldfields Sec. Litig.*, No. 00 Civ. 0717 (DGT), 2004 WL 626810, at *13 (E.D.N.Y. Mar. 30, 2004) ("[E]ven in cases where a unique defense might exist, a plaintiff subject to a unique defense is not an appropriate class representative only if that unique defense might draw the focus of the litigation away from common legal or factual issues.") (citations and internal quotation marks omitted); *see also In re Indep. Energy Holdings*, 210 F.R.D. at 481 ("While the extent of non-reliance on [plaintiffs'] part will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members.").

Accordingly, the Court finds that Plaintiff is not subject to any unique defenses that preclude certification under the commonality, typicality, or adequacy prongs of Rule 23(a).

For the foregoing reasons, the Court finds that Plaintiff has satisfied the requirements of Rule 23(a). The Court now turns to the requirements of Rule 23(b).

B. Rule 23(b)

Provided the criteria of Rule 23(a) are met, a district court must then determine whether the class action fits within one of the three types of class actions listed in Rule 23(b). Plaintiff contends that this class action qualifies under Rule 23(b)(3). Under Rule 23(b)(3), a court may certify the class if "the court finds that the questions of law or fact common to class members predominates over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Central States*, 504 F.3d at 245.

1. Predominance

The first requirement, predominance, will be met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). In cases involving publicly traded securities and purchases or sales in public securities markets, the elements of a securities fraud claim for violation of Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the material misrepresentation and the loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Thus, at this stage, Plaintiff must demonstrate that each element of his Section 10(b) claim will be satisfied via generalized proof applicable to all class members.

GS argues that the predominance requirement of Rule 23(b)(3) cannot be met for two reasons. First, GS asserts that the class may not be certified because individual issues of knowledge pertaining to the alleged fraud predominate over questions common to the class, and thus Plaintiff is not entitled to the presumption of reliance as articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). (*See* GS Opp'n at 8-16.) Second, GS asserts that Plaintiff has failed to establish loss causation by a preponderance of the evidence at this stage. (*See id.* at 16-26.)

For the reasons that follow, the Court finds that Plaintiff has met the predominance requirement contained in Rule 23(b)(3) as to each element of Plaintiff's Section 10(b) claim.

a. Plaintiff Has Met the Predominance Requirement With Respect to Four of the Six Elements of a Section 10(b) Claim

With respect to the six elements under *Dura Pharmaceuticals*, GS only contests Plaintiff's showing in relation to the reliance and, arguably, loss causation elements. The Court agrees that Plaintiff has met its burden with respect to the four uncontested elements,

as each will be subject to generalized proof, and general issues will predominate over individual questions with respect to each element. First, Plaintiff has shown that proof of GS's alleged misrepresentations and/or omissions are susceptible to generalized proof. Plaintiff asserts that such proof will be based on evidence of "Goldman's own public statements regarding Goldman's stock rating system and criteria, the impartiality and objectivity of Goldman's research department, and Goldman's purported compliance with applicable regulations." (Pl.'s Reply at 13.) Second, Plaintiff has shown that scienter will be proven based on evidence common to all class members, as Plaintiff asserts that he will establish that "Goldman management and personnel knew or disregarded the conflicts-of-interest alleged" by Plaintiff. (*Id.* at 14.) Third, there is no dispute that the case involved the purchase or sale of securities, and Plaintiff has shown that, in any event, this element is subject to generalized proof. Finally, Plaintiff has shown that economic loss — to the extent loss causation can be shown, *see infra* — will be shown via class-wide proof. Although the damages, if any, owed to each individual class plaintiff who succeeds on his or her claims will vary, that fact does not defeat certification if the method of calculating damages is common to the class. *See In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 377 (S.D.N.Y. 2000) ("While damages may vary among class members, all share common questions of liability. Damage amounts can be calculated for each individual class member after a determination of liability.").

Having found that Plaintiff has satisfied Rule 23(b)(3) with respect to four of the six elements of a Section 10(b) claim, the Court now turns to the remaining contested elements.

b. The *Basic* Presumption Applies Here, and is not Rebutted by Issues of Knowledge

GS first contends that Plaintiff cannot meet the predominance requirement with respect to the element of reliance because there is evidence in the record that certain members of the putative class had *knowledge* of the alleged fraud. Such knowledge, according to GS, rebuts the presumption of reliance articulated in *Basic*, and, under *In re IPO*, precludes certification under Rule 23(b)(3). For the reasons that follow, the Court finds that the proposed class plaintiffs did not have knowledge of the fraud, and thus the presumption of reliance is not rebutted.

"There is no dispute that a section 10(b) claimant 'must allege and prove' that the claimant traded 'in ignorance of the fact that the price was affected by the alleged manipulation.'" *In re IPO*, 471 F.3d at 43 (quoting *Gurary v. Winehouse,* 190 F.3d 37, 45 (2d Cir. 1999)). In order to show reliance, plaintiffs often rely on what is known as the "*Basic* presumption" or "fraud-on-the-market presumption," adopted by the Supreme Court in *Basic*. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 77-78 (2d Cir. 2004) (finding that the *Basic* presumption is particularly important in securities class action litigation "because the presumption of reliance created by the doctrine is often essential to class certification in securities suits . . .") (citation omitted); *see also McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008).

The *Basic* or "fraud-on-the-market" theory "creates a rebuttable presumption that

(1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value." *Hevesi*, 366 F.3d at 77. As such, the *Basic* theory allows a plaintiff alleging securities fraud to establish reliance "simply by virtue of the defendant's public dissemination of misleading information." *Id.*; *see also DeMarco v. Lehman Bros., Inc.*, 309 F. Supp. 2d 631, 635 (S.D.N.Y. 2004) (finding that, under the *Basic* presumption, "where there has been a misrepresentation to the securities marketplace, a rebuttable presumption arises that investors who purchased or sold securities in an efficient market relied upon the misrepresentation") (citing *Basic*, 485 U.S. at 248-49).

"Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248; *In re Salomon Analyst Metromedia*, 236 F.R.D. 208, 223 (S.D.N.Y. 2006). The Supreme Court in *Basic* hypothesized that the link would be severed and the presumption rebutted "if, despite [defendant's] allegedly fraudulent attempt to manipulate market price, [the truth] credibly entered the market and dissipated the effects of the misstatements." *Basic*, 485 U.S. at 248-49. In that event, "those who traded . . . shares after the corrective statements would have no direct or indirect connection with the fraud." *Id.*; *see also Kalnit v. Eichler*, 85 F. Supp. 2d 232, 241 (S.D.N.Y. 1999).

Here, there can be no dispute that the market for GS stock is an efficient market, and that investors rely on the market as an accurate measure of the stock's value. *See Basic*, 485 U.S. at 249 n.29 (finding the New York Stock Exchange to be a classic efficient market). Accordingly, the Court finds that, as a preliminary matter, Plaintiff is entitled to the *Basic* presumption in order to show that reliance can be proven on a class-wide basis.

Nevertheless, GS argues that knowledge of the alleged fraud in this case was widespread among investors in GS stock, and thus the *Basic* presumption is rebutted. In support, GS relies on public statements by institutional investors, academic papers, and a complaint filed against GS during the class period (the "*Stefansky* Complaint"), all of which publicized the existence of conflicts of interest like those alleged in this case. (*See* GS Opp'n at 10-15.) GS also cites to *In re IPO* and *McLaughlin* as support for the proposition that the *Basic* presumption is rebutted where there is widespread knowledge among investors of the facts allegedly misstated or concealed. (*See id.*; Transcript of April 16, 2008 Oral Argument at 4-20.) Without the presumption, GS contends, Plaintiff cannot show reliance on a class-wide basis, and thus certification should be denied. However, the cases relied on by GS are readily distinguishable and do not support denial of class certification here.

*In re IPO* specifically involved allegations that six different "focus" issuers of shares engaged in a scheme to defraud the investing public in violation of securities laws. The district court certified each of the six classes, and defendants appealed, arguing, *inter alia*, that Rule 23(b)(3) was not satisfied where the *Basic* presumption was rebutted for lack of an efficient market, and individual issues of

13

reliance predominated. The Second Circuit first found that the *Basic* presumption did not apply because the market for the security — in that case, shares issued pursuant to an initial public offering — was not efficient. *See In re IPO*, 471 F.3d at 42-43. The court then found that, in the absence of the *Basic* presumption, the plaintiffs had not shown that reliance, or lack of knowledge of the fraud, was common to the class. *Id.* at 43-44. This was because the allegations, evidence, and discovery responses showed that knowledge of the scheme employed by the issuers was "widespread," and that the plaintiffs' complaint itself demonstrated that many members of the class had *actual involvement* in the fraudulent scheme alleged. *Id.* Accordingly, the court found that, given the individualized questions that existed as to the level of knowledge of each participant, the reliance element was not subject to generalized proof and the class could not be certified. *Id.* at 45.

In *McLaughlin*, the Second Circuit likewise reversed the district court's certification of the class, finding that numerous issues were not susceptible to generalized proof. The plaintiffs in *McLaughlin* consisted of a group of smokers who alleged that they were deceived by the defendant cigarette companies' marketing into believing that "light" cigarettes were healthier than "full-flavored" cigarettes. *McLaughlin*, 522 F.3d. at 220. Plaintiffs sued the defendants not under the securities laws but under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), under which the plaintiffs had to prove reliance, among other things. *Id.* at 219-20. The plaintiffs invoked the *Basic* presumption to make the necessary showing at the class action certification stage that common issues of fact would predominate as to the reliance element. *Id.* at 224. The court found, as it had in *In re IPO*, that the plaintiffs were not entitled to the *Basic* presumption because, unlike the New York Stock Exchange (the applicable market in *Basic*), the market for consumer goods — here, cigarettes — was not an efficient market. *Id.* at 224. The court concluded that, without the *Basic* presumption, the "too individualized" questions of reliance in that particular case would predominate, and thus class certification was not appropriate. *Id.* at 224-25.

The Court finds that neither *In re IPO* nor *McLaughlin* compel a finding that the *Basic* presumption is rebutted in the instant case. In both *In re IPO* and *McLaughlin*, the Second Circuit found that the market at issue was not an efficient market, and that this alone made the *Basic* presumption inapplicable. *See In re IPO*, 471 F.3d at 43 (finding that the market in an initial public offering is not efficient); *McLaughlin*, 522 F.3d at 224 (finding that the market for cigarettes was "anything but efficient"). No such argument is made here, as no argument could be made that the New York Stock Exchange is not an efficient market. *See Basic*, 485 U.S. at 249 n.29 (finding the New York Stock Exchange to be a classic efficient market). Moreover, in both *In re IPO* and *McLaughlin*, the Second Circuit found that the plaintiffs could not show actual reliance absent the *Basic* presumption. Here, GS instead submits that the fact of individualized questions of knowledge about the fraud itself rebuts the presumption because it severs the reliance "link." *See Basic*, 485 U.S. at 248-49 ("[I]f, despite [defendants'] allegedly fraudulent attempt to manipulate market price,

[the truth] credibly entered the market and dissipated the effects of the misstatements, those who traded . . . shares after the corrective statements would have no direct or indirect connection with the fraud.").

Putting aside Plaintiff's arguments that GS's evidence is inadmissible hearsay (*see* Pl.'s Reply at 3-4), the evidence put forth by GS simply does not show that the reliance link was "severed." GS has, at best, proffered evidence that industry members and academics were generally aware that conflicts involving research and investment banking divisions within the same firm were prevalent in the industry. (*See* GS Opp'n at 10-14.) This is very different from the situation in *In re IPO*, where it was undisputed that a substantial number of the proposed class members had *actual* notice of — and indeed, involvement in — the fraudulent scheme that was alleged to have artificially inflated share prices. *See In re IPO*, 471 F.3d at 43. Specifically, many of the initial purchasers of shares in *In re IPO* knew going into the purchase that they would be required to purchase additional shares in the aftermarket, which is what was alleged to have fraudulently driven share prices up in the *IPO* cases. *See id.* ("The Plaintiffs themselves refer to the 'industry-wide understanding' that those who agreed to purchase in the aftermarket received allocations.").

This distinction was not lost on Judge Karas, who, in the context of a statute of limitations argument, previously addressed GS's claims that news articles and a complaint filed against GS put potential plaintiffs on notice of the alleged fraud. Indeed, Judge Karas found that generalized statements of the existence of analyst/banker conflicts was not sufficient to put potential plaintiffs on notice of the fraud, noting that:

> [t]he news articles generally stated that analyst reports were influenced by investment banking considerations. Such media reports did not go beyond the type of general warnings about analysts that have been found insufficiently detailed to alert a reasonable investor to the fraud alleged. Reports indicating tension created by analysts' placement within firms that receive a large proportion of revenue from investment banking business do not suggest widespread fraud to create a duty of inquiry: "[a]t most, those reports should have instilled in plaintiffs a healthy skepticism towards research reports; they did not reveal a 'probability' of fraud." *Fogarazzo v. Lehman Bros.*, 341 F. Supp. 2d 274, 300 (S.D.N.Y. 2004) . . . . Similarly, the [*Stefansky* Complaint] merely alleges general grounds for potential conflicts of interest at Goldman due to the closer relationship between investment bankers and analysts . . . . Such general allegations do not rise to the level discussed in [*Shah v. Meeker*, 435 F.3d 244 (2d Cir. 2006)] for a plaintiff to perceive the general fraudulent scheme alleged.

*Lapin*, 506 F. Supp. 2d at 235. Additionally, Judge Karas noted that throughout the same time period, "investors were also being fed reassuring statements by Goldman, implying that the criticisms discussed in the articles and the complaint did not apply to Goldman" and

15

defending the "independence and quality" of GS research. *Id.* at 235-36.

Unlike in *IPO*, neither the SAC nor any evidence put forth by GS demonstrates that any potential class plaintiff — including investment banks (*see* GS Opp'n at 13 n.4) — had *actual* knowledge of, or participated in, any alleged fraud that resulted from conflicts of interest *at GS*. Because the Court finds that GS has failed to show that the truth about the alleged conflicts at GS (and the result, if any, that those conflicts had on stock price) "credibly entered the market," *Basic*, 485 U.S. at 248-49, the Court finds that the reliance link is not severed, and the *Basic* presumption is not rebutted on these grounds. Were it otherwise, GS could, in theory, rebut the *Basic* presumption and defeat class certification merely by citing comments by certain industry participants that note the potential for a type of fraud in the industry. This type of generalized notice of the potential for fraud is not the type of market recognition of credible information about the fraud contemplated in *Basic* or *In re IPO*. *See Basic*, 485 U.S. at 248-49.

   c. Loss Causation Need Not Be Proven in Order to Invoke the *Basic* Presumption

Finally, GS argues that Plaintiff has not met the requirements of Rule 23(b)(3) because Plaintiff cannot establish loss causation by class-wide proof at this point. (*See* GS Opp'n at 16-26.) GS urges the Court to follow the Fifth Circuit's decision in *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), in which the court held that proof of loss causation is a prerequisite for the invocation of the *Basic* presumption and must be demonstrated at the class certification stage by a preponderance of the evidence. GS asserts that Plaintiff has failed to demonstrate loss causation because Plaintiff's expert, Dr. Scott Hakala, "has not offered any methodology to demonstrate that the alleged misstatements in the Complaint artificially inflated Goldman Sachs['] stock price, let alone that any inflationary effect lasted throughout the almost three-year putative class period." (GS Opp'n at 2.) Plaintiff responds that neither *In re IPO* nor any other Second Circuit case law requires that a plaintiff *prove* loss causation at the class certification stage, and that Rule 23 requires only that loss causation satisfy the predominance requirement — that is, that it be capable of being established using proof common to all class members. (*See* Pl.'s Reply at 8-9.) For the reasons that follow, the Court finds that Plaintiff need not *prove* loss causation at this stage, and that Plaintiff's showing that loss causation will be demonstrated by class-wide proof is sufficient to satisfy the predominance requirement of Rule 23(b)(3) as to loss causation.

There is no dispute that loss causation, which is defined as a "causal connection between the material misrepresentation and the loss," is an element of a Section 10(b) claim and must be proven by a plaintiff in order to succeed on that claim on the merits. *Dura Pharms.*, 544 U.S. at 342 (citation omitted). The parties' dispute instead centers around whether a plaintiff must prove loss causation at the class certification stage in order to invoke the *Basic* presumption and satisfy the predominance requirement. In support of its argument that loss causation must be proven at this stage of the litigation, GS relies heavily on the Fifth Circuit's 2007

16

decision in *Oscar*. In *Oscar*, the Fifth Circuit stated that "*Basic* allows each of the circuits room to develop its own fraud-on-the-market rules" and that the Fifth Circuit "has used this room . . . to tighten the requirements for plaintiffs seeking a presumption of reliance." *Oscar*, 487 F.3d at 264-65 (citations omitted). Accordingly, the court held that, in the Fifth Circuit, the law "require[s] plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption." *Id.* at 265 (citations omitted). The court found that "the trial court erred in ruling that the class certification stage is not the proper time for defendants to rebut lead Plaintiffs' fraud-on-the-market presumption." *Id.* at 270.

At oral argument, GS also cited *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, No. 03 Civ. 2467 (LAP), 2008 U.S. Dist. LEXIS 14198 (S.D.N.Y. Feb. 26, 2008) for the principle that a district court should evaluate the market impact of the alleged fraud in determining whether the fraud on the market presumption should apply. In a footnote in that case, the Honorable Loretta A. Preska, District Judge, found that the *Basic* presumption was inapplicable and/or rebutted where defendants were able to show that "the misrepresentation did not in fact lead to a distortion of the stock price." *Id.* at 2008 U.S. Dist. LEXIS 14198, at *21 n.11. Judge Preska went on to note that "[h]ere, Plaintiff has proffered evidence which, if credited, would constitute a modest showing of market impact. This showing, when weighed against Defendants' opposing evidence, is insufficient to persuade the Court that the *Basic* presumption is applicable to this case." *Id.* However, Judge Preska did not explicitly adopt *Oscar* or make a finding that a determination on loss causation was required in all cases in which a plaintiff relied upon the *Basic* presumption.

Several courts in this District have expressly addressed the Fifth Circuit's decision in *Oscar*, and all have rejected the notion that a showing of loss causation is a requirement at the class certification stage. For example, in *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *4 (S.D.N.Y. Mar. 6, 2008), the court held that the standard set forth in *Oscar* was "limited to the Fifth Circuit," and that "a [p]laintiff in the Second Circuit may benefit from the fraud-on-the-market presumption of reliance at the certification stage based solely on a showing that they made purchases or sales in an efficient market, and need not show that they specifically relied on the allegedly fraudulent conduct, as reliance — an element of a 10(b) [claim] — is presumed." Likewise, in *Wagner v. Barrick Gold Corp.*, Nos. 03 Civ. 4302 *et al*. (RMB), 2008 WL 465115, at *6 (S.D.N.Y. Feb. 15, 2008), the court found that proof of loss causation is not a prerequisite for certification of a class, and specifically cited *Oscar* as a "drastic" departure from the principles articulated in *Basic*. Finally, in the recent case of *In re Alstom SA Sec. Litig.*, --- F. Supp. 2d ---, No. 03 Civ. 6595 (VM), 2008 WL 4053361, at *10 (S.D.N.Y. Aug. 26, 2008), the defendants argued that the plaintiffs could not establish reliance by way of the *Basic* presumption because the plaintiffs could not prove loss causation. The Court rejected this argument, finding that loss causation "relates to the merits of Plaintiffs' case and Defendants have not sufficiently established how [loss causation] is related to any necessary element of Rule 23." *Id.* (citing *Darquea*, *Wagner*, and *In re Credit Suisse*). Other courts have agreed that loss causation

need not be proven at the class certification stage. *See, e.g.*, *Ross v. Abercrombie & Fitch Co.*, Nos. 05 Civ. 819 *et al.* (TPK), 2008 WL 4059873, at *3 (S.D. Ohio Aug. 26, 2008) ("No other Court of Appeals, and no district court outside the Fifth Circuit, appears to have followed *Oscar*."); *In re Micron Tech., Inc. Sec. Litig.*, 247 F.R.D. 627, 634 (D. Idaho 2007) ("It is unlikely that [*Oscar*] would be adopted in this Circuit because it misreads *Basic*.").

The Court agrees with the reasoning employed by the majority of courts in this District that have considered the issue, and finds that *Oscar* should be rejected as a misreading of *Basic*. *See In re Alstom*, 2008 WL 4053361, at *10; *Darquea*, 2008 WL 622811, at *4; *Wagner*, 2008 WL 465115, at *6. *But see In re Credit Suisse*, 2008 U.S. Dist. LEXIS 14198, at *21 n.11. Nothing in *Basic* or any Second Circuit precedent requires that Plaintiff prove loss causation by a preponderance of the evidence in order to invoke the *Basic* presumption and satisfy the requirements of Rule 23.

To the extent that GS relies on *In re IPO* for the principle that the Court is required, at the class certification stage, to make a finding as to whether a plaintiff has established loss causation, that reliance is misplaced. *In re IPO* requires only that district courts resolve any underlying factual disputes to the extent necessary to make a finding on the satisfaction of the Rule 23 requirements. *See In re IPO*, 471 F.3d at 41. Conversely, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement . . . ." Indeed, "[b]y asking the Court to decide which expert report is more credible, defendants are requesting that the Court look beyond the Rule 23 requirements and decide the issue on the merits, a practice *In re IPO* specifically cautions against." *Hnot v. Willis Group Holdings Ltd.*, 241 F.R.D. 204, 210 (S.D.N.Y. 2007). Accordingly, the Court finds that Plaintiff need not prove loss causation in order to invoke the *Basic* presumption.

Plaintiff has shown that, if the class plaintiffs are ultimately able to prove loss causation, that proof will be in the form of an event study provided by Plaintiff's expert, Dr. Scott Hakala. (*See* Pl.'s Mem. at 20.) According to Plaintiff, Dr. Hakala's methodology will show that the loss incurred by the proposed class plaintiffs was attributable to GS's misrepresentations and omissions, which artificially inflated the stock. (*See id.* at 20.) Additionally, Plaintiff asserts that Dr. Hakala's methodology will show that "a consistent and correct model of inflation per share can be developed to cover the Class Period and can be used to compute class-wide damages." (*Id.* at 20-21.) Despite GS's protests that Dr. Hakala's methodology is flawed, a "battle of the experts" is not appropriate at the class certification stage, as the relevant question is only whether Plaintiff's expert's methodology will apply to the entire class. *See Hnot*, 241 F.R.D. at 210 ("[P]laintiffs disagree on whose statistical findings and observations are more credible, but this disagreement is relevant only to the merits of plaintiffs' claim . . . and not to whether plaintiffs have asserted common *questions* of law or fact.") (emphasis in original). GS has not shown that Dr. Hakala's methodology is incapable of proving loss causation on a class-wide basis. Accordingly, the Court finds that Plaintiff has satisfied the requirements of Rule 23(b)(3) with respect to

the loss causation element of a Section 10(b) claim.

In sum, the Court finds that the predominance requirement of Rule 23(b)(3) is met with respect to the reliance and loss causation elements because Plaintiff has demonstrated that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof . . . ." *Moore*, 306 F.3d at 1252.

### 2. Superiority

Finally, the other requirement under Rule 23(b), superiority, will be met if, "in terms of fairness and efficiency," the Court finds that the advantages of a class action are greater than those of "alternative available methods of adjudication." *In re Vivendi*, 242 F.R.D. at 91. In addressing the issue of superiority, Rule 23(b)(3) identifies several relevant factors to consider, including: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

As one court in this District recently observed:

> In general, securities suits . . . easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008) (quoting *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999)); *see also Darquea*, 2008 WL 622811, at *5 ("Securities suits easily satisfy the superiority requirement.").

The Court finds that the factors articulated in Rule 23(b)(3) weigh in favor of a finding of superiority in this matter. This is a lawsuit arising under the securities laws, and as is the case in most securities suits, multiple lawsuits would be inefficient and costly. Here, the number of potential plaintiffs is high, but the amount of potential recovery per plaintiff is not so high as to ensure that each plaintiff could or would bring an action individually. *See, e.g., Darquea*, 2008 WL 622811, at *5. Additionally, GS does not specifically challenge Plaintiff's assertion that a class action lawsuit is the superior method of resolving this case. Accordingly, the Court

finds that Plaintiff has met the superiority requirement of Rule 23(b).

IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to certify the class pursuant to Rule 23 is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion located at document number 40.

SO ORDERED.

    _____
RICHARD J. SULLIVAN
United States District Judge

Dated: September 15, 2008
       New York, New York

\* \* \*

Plaintiff is represented in this matter by Howard G. Smith, Esq., Smith & Smith, 3070 Bristol Pike, Bensalem, Pennsylvania 19020; Ira M. Press, Esq., Kirby McInerney LLP, 830 Third Avenue, 10th Floor, New York, New York 10022; and Lionel Z. Glancy, Esq., Law Offices of Lionel Z. Glancy, 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067. GS are represented by David H. Braff, Esq., and Stephanie G. Wheeler, Esq., Sullivan and Cromwell LLP, 125 Broad Street, New York, New York 10004.